Jerry Fairman was indicted, tried and convicted in the Circuit Court of Bolivar County on a charge of murder less than capital. He was sentenced to life in the custody of the Mississippi Department of Corrections and has appealed to this Court assigning nine (9) errors in the trial below. *Page 912 
 I. THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT MADE AT THE CONCLUSION OF THE STATE'S EVIDENCE. II. THE LOWER COURT ERRED IN REFUSING TO GRANT DEFENDANT'S PEREMPTORY INSTRUCTION SUBMITTED AT THE CONCLUSION OF ALL THE EVIDENCE. III. THE VERDICT OF THE JURY IS CONTRARY TO THE LAW AND THE WEIGHT OF THE EVIDENCE. IV. THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION OF JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OF THE JURY, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL.
The evidence favorable to the State reflects that on December 7, 1985, Laverne Jones died as a result of blows with a stick inflicted about his head by appellant Jerry Fairman. About 3:30 p.m. at a street corner in Cleveland, Mississippi, appellant and Jones met and engaged in an argument. Appellant and Jones each had a knife, but Michael Prewitt, who was present, broke up the altercation and all left. A police officer was called, and he reported to the area, stating that he would straighten out the "mess."
Later, after dark, appellant and Prewitt drove to a store in appellant's truck. Upon returning to the truck, appellant drove around to the back of the store without turning on the lights. When he did turn on the lights, Jones was in front of the truck, coming from behind the store. As Jones approached appellant, the latter hit Jones several times with a large stick, which he used to prop up the hood of the truck. Jones apparently fell to the ground, but got up and started walking toward his house. As Jones walked away, police officer Ollie White arrived and talked to appellant, who still held the stick. Phillip White testified that he saw appellant beating another person (Jones) with a stick as Jones was walking away. According to evidence for the State, during the altercation, when appellant was hitting Jones with the stick, Jones had no weapon in his hands.
Jones arrived at his home about 8:30 p.m. with his head bleeding. About 12:00 a.m., Annie Mae Miller, who also lived at the house, took him to the emergency room at the hospital, where he was examined by Dr. Gough, the medical doctor on duty there. He found laceration of the scalp, and treatment consisted of stitches, antibiotic ointment, bandages, X-ray of the skull, which showed no fracture, an X-ray of the jaw, which indicated a fracture of the left jaw, and a tetanus shot. Jones was discharged after two hours and sent home with instructions to return to his personal physician in 5-7 days for removal of the stitches. The next morning, Annie Mae Miller reported that Jones was dead.
Dr. Bennett, a forensic pathologist, performed an autopsy on Jones and testified that the cause of death was a large blood clot, i.e., an epidural hematoma, which was secondary to head injuries from a beating with a blunt instrument. The blood clot was caused by a skull fracture. The stick used by appellant was consistent with the wound. The fracture was across the top of the skull, from above the right ear to the left temple.
Appellant's defense was self-defense. He claimed that Jones came toward him, appellant got the stick from his truck, and when Jones reached for a knife, appellant hit him approximately two (2) to four (4) times; and that when Jones quit coming at him, he did not hit him any more.
The first four assigned errors present the same or related law issues and we consider them together. In his argument on those issues, appellant contends that the wounds inflicted by appellant on Jones were not mortal in nature; that the treatment thereof by the physician constituted the sole independent intervening cause of death; that the death of Jones was not caused by actions of the appellant, evincing a depraved heart; and that appellant was acting in necessary self-defense.
The appellant contends that the Weathersby rule applies to the facts of this case. The law books are replete with cases *Page 913 
which state over and over the proper application of the rule. Many cases have advanced the defense of Weathersby, but few have prevailed. It is a just and good rule when applied to the facts which properly support the rule. Simply, in a case where the defendant or his witnesses are the only eye witnesses to the homicide, their version of what occurred, if reasonable, and not substantially contradicted in material particulars by credible evidence, physical facts, or facts of common knowledge, must be accepted as true. Weathersby v. State, 165 Miss. 207,147 So. 481 (1933); Harveston v. State, 493 So.2d 365 (Miss. 1986).
In the case sub judice, there were eye witnesses who supported the State's theory and the appellant's theory, and, therefore, the testimony was conflicting. Likewise, the physical facts substantially contradicted the defendant's version. This is not a case for application of the Weathersby rule.
The appellant argues that maltreatment by the physician, who administered treatment in the emergency room, was the sole independent intervening cause of death. However, the unlawful acts or omissions of an accused need not be the sole cause of death. The test for responsibility is whether the act of the accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed. Holliday v. State, 418 So.2d 69, 71 (Miss. 1982) [citing Schroer v. State, 250 Miss. 84, 91, 160 So.2d 681, 684 (1964)].
In Meshell v. State, 506 So.2d 989, 992 (Miss. 1987), quoting from Conner v. State, 179 Miss. 795, 177 So. 46 (1937), we stated:
 The wrongful force which caused the dazed and staggering condition of the deceased was put into operation by appellant and continued in operation or progress, and had not lost its identity or continuity as such, until the final injury. It was not the push given by Tubb which caused the deceased to fall against the iron post, but his continued dazed and staggering condition, for which appellant was the sole responsible party. Without the original wrong by appellant, what was done by Tubb would not have been sufficient to cause the deceased to fall, and there is no evidence sufficient to have authorized the jury to find otherwise. An intervening cause must be an efficient cause — something more than what is merely contributory. 179 Miss. at 799, 177 So. at 47.
506 So.2d at 992.
The Court further said in Meshell:
 The record reflects that the cause of the victim's death in the present case was trauma to the brain; that although discharged against medical advice, none of the testifying physicians indicated that such discharge was the cause of death; that medically, nothing more could have been done to relieve the victim; and that the blow inflicted by appellant caused the victim to fall and strike his head on the concrete pavement. We are of the opinion that the evidence overwhelmingly supports the jury's verdict on the question.
506 So.2d at 992.
Appellant next contends that the State's proof was not sufficient to establish beyond a reasonable doubt that appellant acted in a manner eminently dangerous to others and evincing a depraved heart. In Johnson v. State, 475 So.2d 1136 (Miss. 1985), Christine Johnson was convicted in the Circuit Court of Coahoma County for the murder of her 3 1/2 month old son. Police officers were summoned to the apartment of Johnson and found the body of her small son which was badly bruised and cut. She claimed that the cause of the baby's death was an accidental fall of a few feet. The cause of death was established as extensive blows to the head. In affirming the conviction for "depraved heart" murder under Mississippi Code Annotated § 97-3-19(1)(b) (1972), this Court stated:
 It has long been the case law of this state that malice aforethought, premeditated design, and deliberate design all mean the same thing. See Dye v. State, 127 Miss. 492, 90 So. 180 (1921); Hawthorne v. State, 58 Miss. 778 (1881); McDaniel v. State, 8 Smed. and M. 401 (Miss. 1847). Furthermore, in Talbert v. *Page 914 State, 172 Miss. 243, 159 So. 549, 551 (1935), the Court had under consideration two jury instructions, one of them being in the precise language of the "depraved heart" murder statute. The Court, referring to the forerunner of § 97-3-19(1)(a) (sec. 985 subds. (a) and (b) of the Code of 1930), said the following:
 This statute but epitomizes the common law found. . . . Murder is the voluntary killing of any person of malice prepense or aforethought, either express or implied by law; the sense of which word malice is not only confined to a particular ill-will to the deceased, but is intended to denote . . . an action flowing from a wicked and corrupt motive, a thing done malo animo, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty and fatally bent upon mischief. (Citations omitted).
475 So.2d at 1139.
We are of the opinion that the evidence supports the charge in the indictment.
Appellant argues that the axe handle of the appellant and blows inflicted to Jones' head, at best, amounted only to manslaughter, and states that the court should have instructed the jury on the lesser-included offense of manslaughter. The appellant submitted an instruction on manslaughter, which undoubtedly would have been granted by the lower court, but then withdrew the instruction. Obviously, appellant was exercising trial strategy and gambled upon a clear verdict of not guilty, rather than settle for one of manslaughter. The argument fails.
We are of the opinion that the evidence set out a guilt issue for the determination of the jury; that the verdict of the jury is supported by the evidence; and that the verdict is not contrary to the weight of the evidence. Koch v. State,506 So.2d 269 (Miss. 1987); Carter v. State, 493 So.2d 327 (Miss. 1986); Weeks v. State, 493 So.2d 1280 (Miss. 1986); Griffin v.State, 480 So.2d 1124 (Miss. 1985); Johnson v. State,476 So.2d 1195 (Miss. 1985); Hammond v. State, 465 So.2d 1031
(Miss. 1985); Warn v. State, 349 So.2d 1055 (Miss. 1977).
 V. THE LOWER COURT ERRED IN REFUSING TO GRANT INSTRUCTIONS D-2, D-4 AND D-5, DEPRIVING THE JURY OF A FULL AND COMPLETE INSTRUCTION ON THE LAW AS TO SELF-DEFENSE.
The lower court granted the instruction set forth in Robinsonv. State, 434 So.2d 206 (Miss. 1983), which was suggested by this Court as a proper instruction on self-defense. Instruction D-2 and D-4, requested by the appellant, were self-defense instructions embodying in different verbiage the law of self-defense. Appellant states in his brief that Instruction D-2 would have duplicated to a great extent the matters contained in the Robinson instruction and was properly refused by the court. He further stated that D-4 and D-5 "are duplicative of each other."
The trial judge refused Instruction D-5, which follows:
 In passing upon his [sic] guilt or innocence of the Defendant, the jury should not try him by the light of after developed events, nor hold him to the same cool and correct judgment which you are able to form sitting in the jury box as you are, but you should put yourselves in his place and judge his acts by the facts and circumstances by which he was surrounded at the time of the difficulty.
The lower court's assigned reason for denying D-5 was that he felt the theory of self-defense was fully covered in theRobinson instruction.
In Arrington v. State, 366 So.2d 246 (Miss. 1979), the Court granted a similar instruction absent that part which appears in D-5, supra, and the Court held that the refusal of the instruction did not constitute reversible error, since the jury was adequately instructed by other self-defense instructions. In the case sub judice, defense counsel was able to argue the sense of the instruction to the jury, even though the instruction was not granted. *Page 915 
We are of the opinion that the court did not commit reversible error in refusing the instructions.
 VI. THE LOWER COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A NEW TRIAL BASED, IN PART, UPON THE ALLEGATION AFTER VERDICT, THAT THE JURY WAS TOLD FROM AN OUTSIDE SOURCE IT HAD TO REACH A VERDICT OR THE JURORS WOULD BE LOCKED UP FOR THE NIGHT.
On December 19, 1985, six (6) days after the jury verdict, appellant filed a motion for new trial contending, among other things, that the jury received information or communications either from one of the bailiffs or one of the selected spokespersons of the jury for the purpose of making inquiry to the court, that the jury was led to believe that, if it was unable to reach a verdict, the court would lock it up overnight until the jury did so, thereby placing undue pressure upon the jurors to reach a verdict. A hearing was conducted by the court on December 20, during which the lower court permitted the twelve (12) jurors and the bailiff to be interrogated with respect to misconduct by the bailiff or by anyone else not a juror. According to defense counsel, he had received some "hearsay" and "double hearsay" information reflecting that spokesperson Vivian Jones had told the other jurors that they would have to come back with a verdict, or the judge was going to lock them up until they did. The court followed the procedure embodied in the following remarks:
 BY THE COURT: The Court intends to bring the jurors, one by one, to the witness box, remind the jurors that they are under oath, still under the same oath that they took when qualified as jurors to answer questions truthfully propounded by the Court or counsel, and will inquire of them as to whether anyone, not a juror, entered their room or at any time gave them any direction, reference, the return of a verdict or when they had to return a verdict. The Court will not inquire what the jurors said or any one juror said to the other jurors in the privacy of the jury quarters during deliberation. I understand counsel for the Defendant would like to make a record with regard to the Court's ruling in following Shaw v. State.
 * * * * * *
 BY THE COURT: All right. Under Shaw v. State, the Court will not question a juror as to whether a juror made that statement. Now, if you want to identify for the Court the one who said the bailiff said they had to agree, I will specifically ask that juror even more questions than I do the other ones, as to whether the bailiff said it. Now, if one of the jurors told the other jurors something —
 BY MR. HATCHER: — The only one that could possibly be — and I don't know whether this jurors said that Vivian Jones said the bailiff told them that or the Judge told them that. The juror I am referring to that mentioned the word "bailiff" would be juror number two, Hattie Williams.
Each of the twelve jurors, including Hattie Williams, thereafter testified that neither a bailiff or anyone else not a juror told the jury while they were deliberating that they had to reach a verdict of guilty or not guilty or the judge would lock them up until they did. Crawford Sheedy, a court bailiff, made similar denials under the official oath. Counsel for appellant states in his brief: "The question squarely presents itself as to whether a juror may testify, either directly or through the court, as to misconduct of a [fellow] juror." He admits that under the current state law in Mississippi, a negative answer is required.
The law is settled in this state that jurors will not be permitted to impeach a verdict rendered by them. Witherspoon v.State, 441 So.2d 1363 (Miss. 1983), citing Ratliff v. Nail,231 So.2d 798 (Miss. 1970).
This Court has held that after the verdict has been received and entered, testimony of jurors will not be received for the purpose of impeaching their verdict, and that jurors cannot impeach their verdict by testifying as to the motives and influences which affected their deliberations. *Page 916 Capler v. State, 237 So.2d 445 (Miss. 1970); Bickcom v.State, 286 So.2d 823 (Miss. 1973). This does not preclude testimony as to the misconduct of others in the presence and hearing of the juror or as to outside influence brought to bear upon them. In Bickcom, supra, the Court said:
 We have held in different cases that jurors cannot impeach their own verdict by testifying as to the motives and influences which affected their deliberations. McInnis v. State, 213 Miss. 491, 57 So.2d 137 (1952); Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925). These cases, and others which prohibit jurors from impeaching their own verdict, do not require that jurors may not be permitted to testify as to the fact of the misconduct of others in their presence or hearing, or as to outside influences brought to bear upon them. While we think the technically correct application of the rule in this case would not have allowed the jurors to answer the question propounded them by the district attorney as to whether the presence of Deputy Dealton influenced their verdict, no reversible error occurred upon the facts and circumstances before us.
286 So.2d at 825.
In Shaw v. State, 79 Miss. 577, 31 So. 209 (1902), the Court said:
 Jurors may not be heard to impeach their verdict by their own misconduct, or by what took place in their private room, or because of the ground son which they found their verdict but are competent to show the misconduct of others.
79 Miss. at 580, 31 So. at 209.
It appears that the trial judge, in the exercise of his sound judicial discretion, handled the matter with circumspection, followed the established law in this state, and did not commit error.
We are of the opinion that the lower court committed no reversible error in the trial of the case, and that the judgment must be affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.