**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-60420

JERRY FAIRMAN,

                                                              Petitioner-Appellee,

versus

JAMES V. ANDERSON, SUPERINTENDENT, MISSISSIPPI STATE
PENITENTIARY; MIKE MOORE, Attorney General, State of
Mississippi,

                                                              Respondents-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi

September 28, 1999

Before JONES, STEWART and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this appeal, the State of Mississippi ("State") contests the district court's grant of

Petitioner-Appellee Jerry Fairman's ("Fairman") petition for habeas corpus relief pursuant to 28

U.S.C. § 2254 (1988). As we will explain *infra*, although we disagree with some of the district

court's reasoning, we concur in its conclusion that Fairman is entitled to habeas corpus, and we thus

affirm the judgment of the court below.

# I

On the afternoon of September 7, 1985, Fairman and Laverne "Whoop" Jones ("Jones"), each armed with a knife, met on a street corner and engaged in an argument. See Fairman v. State, 513 So.2d 910, 912 (Miss. 1987). Michael Prewitt ("Prewitt"), who was also present, broke up the altercation. See id. In the interim, someone called a police officer, who reported to the area and stated that he would straighten out the "mess." See id. All three men subsequently left the scene. See id.

After dark that same day (around 6:30 p.m.), Fairman and Prewitt drove to a store in Fairman's truck. See id. Fairman went into the store; when he returned to the truck, he and Prewitt drove behind the store without turning on the truck's headlights. See id. When he subsequently turned on the headlights, Fairman saw Jones in front of the truck, approaching them. See id. Fairman stopped the truck. He then exited the vehicle, and, noting to Prewitt that "he's got something," armed himself with a large stick that he more commonly used to prop up the hood of his truck. See id. Fairman beat Jones about the head with the stick several times; Jones fell to the ground but then rose and walked away in the direction of his house. See id.

Officer Ollie White ("White"), who was a short distance away, arrived at the scene shortly after the beating.[1] See id. He questioned Prewitt and Fairman (who was still holding the stick) as to what had happened. See id. Satisfied that the fight was not serious and did not require any further detention, White allowed Prewitt and Fairman to leave the area.

---

[1] At trial, the State's evidence indicated that Jones had no weapon in his hands during the beating. See 513 So.2d at 912.

Jones returned home around 8:30 p.m. with his head bleeding; hours later, Annie Mae Miller ("Miller"), who lived with Jones, took him to the emergency room of the local hospital, where he was examined, treated, and released. See id. Although the examination revealed that Jones's jaw had been fractured, the X-rays revealed no skull fracture; the treating physician stitched Jones's wounds and advised him to see his own doctor approximately a week later for removal of the stitches. See id. That same night, Miller reported that Jones had died in his sleep. See id.

An autopsy revealed that Jones died from an epidural hematoma which was secondary to head injuries from a beating with a blunt instrument. The hematoma was the product of a skull fracture, which extended across the top of Jones's skull, from above his right ear to the left temple. See id. Investigators found Fairman's stick to be consistent with the wound. See id.

Fairman was tried for the murder of Jones in the Circuit Court of Bolivar County, Mississippi. See id. at 911. At trial he urged a theory of self-defense, claiming that he hit Jones with the stick two to four times when he saw Jones reach for a knife as he came toward him. See id. at 912. He averred that, when Jones ceased his approach, he stopped hitting Jones. See id. Prewitt, the only eyewitness at the scene of both altercations, testified for the prosecution that, although he had seen a knife in Jones's hand during the first argument, he had not seen any weapon at the time of the second altercation.

Fairman was convicted of murder less than capital on December 13, 1985, and sentenced to life in prison six days later. See id. at 911. The conviction and sentence were affirmed by the Mississippi Supreme Court on September 16, 1987, see id. at 916, and rehearing was denied on October 28, 1987.

3

On January 9, 1989, Prewitt signed an affidavit recanting his trial testimony. In it, he stated that Jones had wielded a butcher knife during the second encounter and that Fairman had struck Jones only after the threat from the knife became apparent. He explained that he had committed perjury only because the police coerced him into making a false statement by threatening to charge him with the murder of Jones if he did not testify for the State.

Although the time for filing a petition for state post-conviction relief expired on September 16, 1990, Fairman did not file his petition until June 8, 1992, when he submitted a *pro se* state application for leave to file a motion for post-conviction relief and a motion for post-conviction relief. He argued that his claims should not be procedurally barred as untimely because he had retained a series of attorneys to assist him on his case before the limitations period had expired, and each had failed to act. Fairman detailed through affidavits and exhibits his difficulties in attempting to procure legal assistance and also submitted newly-discovered evidence in the form of Prewitt's affidavit. On July 29, 1992, the Mississippi Supreme Court denied Fairman's claims as time-barred without exception pursuant to MISS. CODE ANN. § 99-39-5(2) (Supp. 1991), and denied his request for rehearing on September 13, 1992.

On August 24, 1993, Fairman filed a *pro se* motion asserting twelve claims for federal habeas relief pursuant to 28 U.S.C. § 2254 (1988).[2] On December 16, 1996, the magistrate judge recommended that each of Fairman's claims be dismissed except for his allegation that the state had knowingly used false evidence to obtain Fairman's conviction. Addressing the procedural bar in §

_____

[2] The district court correctly declined to apply the 1996 amendments to § 2254 pursuant to Lindh v. Murphy, 521 U.S. 320, 335-36 (1997). This court has also made clear that federal habeas applications filed prior to the effective date of the AEDPA amendments are subject to pre-AEDPA law. See Creel v. Johnson, 162 F.3d 385, 388 n.1 (5th Cir. 1998).

99-39-5, the magistrate judge found that Fairman had alleged sufficient facts to establish "cause for his default" (the failure of the attorneys on whom he had relied to pursue relief for him) and "actual prejudice" that resulted from constitutional due process violations. Failure to consider the claims, the magistrate opined, also would lead to a fundamental miscarriage of justice. Although both Fairman and the State objected to the magistrate's report and recommendation, the district court adopted the findings therein on February 13, 1997. In its attendant order, the district court explained why attorney inaction in Fairman's case constituted sufficient cause for default and sent the case back to the magistrate for an evidentiary hearing. The magistrate appointed counsel for purposes of the hearing, which attorney continues to represent Fairman.

After taking testimony from Prewitt and White on the newly-discovered evidence claim on May 27 and June 27, 1997, the magistrate judge filed a second report and recommendation on November 12, 1997, making specific factual findings and granting Fairman habeas relief. He found that Fairman's request for a new trial should be granted because his claims were not procedurally barred; that Prewitt's recantation was credible;[3] and that the State knowingly used perjured testimony that unquestionably affected the jury's decision with regard to Fairman's self-defense claim. The district court adopted the report and recommendation of the magistrate judge on June 5, 1998, and ordered Fairman to be released from custody unless he was retried within 120 days. The State filed the instant appeal on June 15, 1998. On July 17, 1998, the district court stayed its order that Fairman

---

[3] Although White testified at Fairman's trial that he had witnessed the beating and went to the scene on his own initiative thereafter, he testified at this hearing that he had not seen the second fight between Fairman and Jones because "it was all over with" when he arrived. White did not investigate the matter further at the time, waiting to arrest Fairman until the next day, after Jones had died. White testified that he had made neither threats nor promises to Prewitt in exchange for his false testimony with regard to whether Jones had a knife during the second altercation.

5

be released from custody on the condition that the State request an expedited appeal. We granted that unopposed motion on September 22, 1998.

## II

Two different elements of review are applicable to this case.[4] The second sequentially, but the one of which we may more easily dispose, is our review of the district court's grant of habeas corpus to Fairman. We review a court's findings of fact on requests for habeas corpus relief for clear error and its rulings on issues of law *de novo*. See Little v. Johnson, 162 F.3d 855, 859 (5th Cir. 1998). As with any case we review, a "finding of fact made by the district court is clearly erroneous only when the reviewing court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." 2925 Briarpark, Ltd. v. Commissioner, 163 F.3d 313, 317 (5th Cir. 1999). A due process claim that a state knowingly used perjured testimony at trial or allowed untrue testimony to go uncorrected presents a mixed question of law and fact, and thus we will review the underlying facts for clear error and the conclusions from the facts *de novo*. See Creel, 162 F.3d at 391.

We also review *de novo* a district court's decision to grant federal habeas review of a prisoner's claims defaulted in state court pursuant to an independent and adequate state procedural rule. See Martin v. Maxey, 98 F.3d 844, 847 (5th Cir. 1996). Under pre-AEDPA law, 28 U.S.C. § 2254(d) required federal courts in habeas proceedings to accord a presumption of correctness to state-court findings of fact. See Sumner v. Mata, 455 U.S. 591, 591-92 (1982) (per curiam). The habeas corpus statute applied to Fairman provided that "a determination after a hearing on the merits

---

[4] We have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1291, 2253, 2254 (1994) and FED. R. APP. P. 22(b).

6

of a factual issue, made by a State court of competent jurisdiction . . . shall be presumed to be correct." 28 U.S.C. § 2254(d) (1992). Only when one of seven specified factors is present or the federal court determines that the state court's finding of fact "is not fairly supported by the record" may the presumption properly be viewed as inapplicable or rebutted.[5] See Mata, 455 U.S. at 592.

---

[5] The relevant pre-amendment portion of § 2254 provided

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit–
(1) that the merits of the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
(3) that the material facts were not adequately developed at the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

In the instant case, of course, there were no factual findings by any state court with regard to Fairman's claims because no state post-conviction tribunal ever considered the merits of Fairman's claims. The state court made a legal conclusion that Fairman's petition was procedurally barred; although a district court applying pre-AEDPA law is to review the state court's legal conclusions *de novo*, see Amos v. Scott, 61 F.3d 333, 350 (5th Cir. 1995), legal conclusions that are explicitly grounded in state law may not be reviewed on federal habeas. See Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996).

When a state habeas court decision rejecting a petitioner's constitutional claims in a criminal case rests on an independent and adequate state procedural bar, and does not fairly appear to rest primarily on federal law, a federal court may not review the merits of the federal claim absent a showing of cause and prejudice for the procedural default, or a showing that failure to review the claim would result in a complete miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Young v. Herring, 938 F.2d 543, 546 (5th Cir. 1991) (en banc) (same). In a recent case, this court held that Louisiana's use of the contemporary objection rule, as applied specifically to claims arising under Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), is constitutionally adequate. See Muhleisen v. Ieyoub, 168 F.3d 840, 843 (5th Cir. 1999). We observed that "[a]n adequate rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Id. (citations omitted).

Nevertheless, the resolution of "when and how defaults in compliance with state procedural rules can preclude [federal court] consideration of a federal question is itself a federal question." Johnson v. Mississippi, 486 U.S. 578, 587 (1988). On that basis, the district court concluded that

---

28 U.S.C. § 2254(d) (1988).

8

the state habeas court's decision not to consider Fairman's petition was in error.[6] The district court determined, *inter alia*, that the evidence presented by Fairman constituted considerable proof of actual innocence, so that failure to consider his claims would result in a complete miscarriage of justice. Consequently, the court found that the state's procedural bar in this case was not constitutionally adequate. Since the state court made no factual findings, the district court made findings of fact with regard to whether Prewitt was truthful in his affidavit and his testimony at the evidentiary hearings. We will examine the factual findings leading to this decision for clear error.

## III

The State contends that the district court erred when it determined that review of Fairman's federal claim was not precluded by the state court's imposition of a procedural bar against his state claims. The State argues that Fairman procedurally defaulted his claim under Mississippi law by failing to bring it within three years after the time in which his direct appeal was ruled upon by the Mississippi Supreme Court. See MISS. CODE ANN. § 99-39-5(2). In response, Fairman counters that Prewitt's testimony "is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence." See id.; see also Moore v. Roberts, 83 F.3d 699, 701 n.4 (5th Cir. 1996) (enumerating exceptions to the statute of limitations). Fairman further claims that, in any event, he has demonstrated either cause and

---

[6] To the extent that the district court's determination in this case either involved a mixed question of law and facts, see Mata, 455 U.S. at 597, or a pure question of law, see Thompson v. Keohane, 516 U.S. 99, 111-12 (1995) (holding that questions with a "uniquely legal dimension" were outside § 2254(d)'s presumption of correctness), § 2254(d)'s provisions would not have applied in any event. But cf. Lewis v. Jeffers, 497 U.S. 764, 783 (1990) (holding that an error pertaining to a mixed question of law and fact under state law is not cognizable in a federal habeas proceeding).

prejudice or that a failure to address his claim would result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

## A

We will first address whether Fairman has shown cause and prejudice to overcome the procedural default in this case. Through its adoption of the magistrate judge's first report and recommendation, the district court concluded that the inaction of the attorneys retained by Fairman in not filing a timely post-conviction motion in state court constituted sufficient cause for his default because he reasonably relied on their expertise to protect his rights.[7] Although the State challenged the district court's conclusion that the attorneys were the "factual" cause of Fairman's default, the court nonetheless found that the State failed to disprove Fairman's reasonable reliance on his second retained attorney. More importantly, the court rebuffed a challenge to its conclusion that the attorneys were the "legal" cause for Fairman's default by distinguishing Coleman. The court acknowledged the Supreme Court's holding in Coleman that "attorney errors made in the course of the representation" cannot constitute cause for default in state post-conviction proceedings because there is no constitutional right to counsel on habeas review. See id. at 752, 754. It further acknowledged that the existence of cause for default ordinarily turns on some objective factor external to the defense that impeded counsel's efforts to comply with the State's procedural rule. See

---

[7] Since we determine that Fairman did not show cause to overcome the procedural bar, we need not address the prejudice aspect of the test. We assume that a belief that its argument under the cause prong carried the day explains the State's failure to contest the district court's prejudice finding in this court.

For the sake of completeness, we do note that, following its finding of cause when it adopted the magistrate judge's first report and recommendation, the district court found actual prejudice as a result of the alleged violation of federal law. The court concluded that Prewitt's testimony may have influenced the jury in favor of Fairman's self-defense theory and brought an acquittal.

10

id. at 753. The court, however, found Coleman inapposite because there was "no allegation or evidence that either attorney in fact represented [Fairman] in the state court collateral proceeding or in any prior court proceeding."

We disagree with the district court's analysis and application of Coleman. As the State correctly observes, the district court's interpretation would lead to illogical results. Namely, if attorney errors made in the course of representation cannot constitute cause for default, while attorney errors not made in the course of representation can, then attorneys with no connection to a case would be held to a higher standard than those who are intimately involved. We need not dwell on this issue, however, because we conclude that, while the quality of their performances fell short of the optimum, both attorneys did represent Fairman; t hey simply failed to act effectively in his behalf. We believe that, based on explicit language in Coleman, the Supreme Court has mandated such a conclusion.

We nonetheless acknowledge that Coleman is not on all fours with the case before us because Fairman alleges attorney errors that arose out of (1) an attorney's failure to represent him on (2) state habeas. By contrast, the petitioner in Coleman had counsel on state habeas; he simply alleged that that counsel ineffectively assisted him and caused him procedurally to default his federal habeas claim. See id. at 752. In that case, the Supreme Court held that, because appointment of counsel on state habeas is not constitutionally required, any error committed by an attorney in such a proceeding "cannot be constitutionally ineffective." Id. Because no constitutional interest is implicated, only a narrow class of attorney errors may serve to overcome a state's procedural rules, those where failure to hear the claim would result in manifest injustice.

The Court held that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Id. at 753. Applying the language of the opinion to the instant case, it is clear that Fairman has not demonstrated cause for his default because he bears responsibility for the failure to act:

> [T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard.

Id. (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)) (internal quotations omitted). In short, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." Id. (citing Murray, 477 U.S. at 488) (internal quotations omitted).

Fairman, while attempting to sidestep Coleman by arguing that his attorneys never represented him *at all*, actually falls squarely within that holding. His argument is simply that his attorneys failed to act or otherwise inadvertently allowed deadlines to pass, contentions that are merely ones of poor representation cloaked in the mantle of no representation. Fairman demonstrates no external impediment—necessary to show "cause"—that prevented his counsel from constructing or raising his claims.

Of course, ineffective assistance always constitutes "cause" where it amounts to an independent constitutional violation. See id. at 753-54. We reconfirmed as much recently, holding that ineffective assistance of counsel can constitute cause at the trial level where it amounts to an independent constitutional violation. See Meanes v. Johnson, 138 F.3d 1007, 1012 (5th Cir. 1998).

12

The crucial, and in this case fatal, distinction for Fairman is that the attorney errors to which he adverts occurred at the post-conviction stage. Because Fairman had no right to counsel in his state collateral proceeding, insofar as his claim is for ineffective assistance, it must also fail because there can be no independent constitutional violation—necessary to show ineffective assistance—where there is no constitutional right. See Coleman, 501 U.S. at 755-57.

A recent decision from this court confirms that including Fairman's "no assistance" claim within Coleman's rubric is the correct path. In Moawad v. Anderson, 143 F.3d 942 (5th Cir. 1998), applying Mississippi law, we held that, where a federal habeas petitioner failed to assert an ineffective assistance claim in state collateral relief proceedings, he could not establish cause in federal proceedings to overcome the procedural bar erected against him. See 143 F.3d at 947. Although Fairman did present his claim (amounting to ineffective assistance) at the state post-conviction stage, that claim was itself procedurally defaulted due to Fairman's own negligence, and, thus, the rule of Moawad extends to cover failures *properly* to assert claims in state court. Furthermore, Moawad, does not stand for the principle that the nature of a failure to act is dispositive, as Fairman would have us believe. Even if it were, Fairman's claim and that addressed in Moawad are more alike than not. Moawad involved a complaint that Moawad's state habeas counsel neglected to raise his trial counsel's failure to lodge a Sixth Amendment objection. See id. Fairman likewise alleges a failure to act at his state habeas review, and his claim is similarly inadequate to establish cause.

Additionally, even if we were to find that Fairman's attorneys were in some part the factual cause of Fairman's default, we would nonetheless conclude that the lion's share of the cause of Fairman's failure timely to file his state motion for post-conviction relief rests with Fairman himself. Fairman did not retain his second attorney until two months before the deadline for his state

13

application, more than a year after he began to complain that his first attorney was not performing his job properly. Furthermore, Fairman possessed ample time to file a *pro se* state motion for post-conviction relief in the meantime, yet he did not file such a motion until almost two years after the deadline. For each of these reasons, we conclude that Fairman has not demonstrated cause sufficient to overcome the State's procedural default bar.

**B**

We turn now to the alternate argument that failure to grant habeas to Fairman would constitute a fundamental miscarriage of justice. We are necessarily chary of allowing fundamental miscarriage claims to overcome state procedural bars, both because of our federalist view that state proceedings and rules should normally be free from federal intervention and because our precedent confirms that the mountain that a petitioner must scale in order to prove a fundamental miscarriage claim is daunting indeed. See, e.g., Jones v. Jones, 163 F.3d 285, 297, 307 (5th Cir. 1998) (reversing the district court, which had found that failure to grant habeas would represent a fundamental miscarriage of justice). Consequently, the fundamental miscarriage of justice exception is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995); see also Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998) (following Ward in declining to apply the fundamental miscarriage standard because petitioner failed to allege actual innocence). To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). Examples of new, reliable evidence that may establish factual innocence

14

include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence. See id. at 324; Sawyer v. Whitley, 505 U.S. 333, 340 (1992).

Fairman argues that Prewitt's eyewitness account of the altercation established Fairman's claim of self-defense such that it was more likely than not that no reasonable juror would have convicted him in the light of this evidence. The record does not reveal whether the district court accepted Fairman's actual innocence as a factual matter, although our colleague below indicated his belief in Prewitt's new testimony and later opined that "there was a reasonable likelihood that [Prewitt's] false testimony could have affected the judgment of the jury." These findings alone, however, do not strictly meet the more demanding actual innocence standard required to find a fundamental miscarriage of justice.

We nevertheless conclude that Fairman has satisfied the Ward threshold showing of actual innocence because his self-defense claim is anchored by the district court's crucial credibility determination that Prewitt gave a trustworthy eyewitness account when he testified at the 1997 hearings. Belief in Prewitt's testimony confirms Fairman's claim of self-defense such that it was not just *possible* but *more likely than not* that no reasonable juror would have convicted him. Because Fairman's entire defense was self-defense, and Prewitt was the only witness to the fight other than Fairman and Jones, accepting Prewitt's testimony as true necessitates a finding that Fairman was actually innocent.

Mississippi law states that, to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some

15

great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts. See Robinson v. State, 434 So. 2d 206, 207 (Miss. 1983); see also Flowers v. State, 473 So. 2d 164, 165 (Miss. 1985) (overruling Robinson, but only to the extent that it criticized a previously-accepted self-defense jury instruction, instead of condemning it). Furthermore, it has always been the law in Mississippi that a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing. See Haynes v. State, 451 So.2d 227, 229 (Miss. 1984).

Mississippi law provides that flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in, nothe provoker of, nor the aggressor in, unlawful combat. See id. In such a case, an individual may stand his ground and resist force by force, so long as that resistance is not disproportionate to the attack. See Cook v. State, 467 So. 2d 203, 210 (Miss. 1985). Each of the elements for self-defense is present in the case at bar. Prewitt testified that Jones was holding a knife, visible to both him and Fairman, when he approached the truck before the altercation. He further testified that Fairman exited the truck upon seeing Jones approaching with the knife. He also testified that, when Jones continued to approach the truck, Fairman retrieved a stick from behind his seat and hit Jones with it. Although the evidence is unclear as to whether Fairman could have prevented the altercation by fleeing the scene, under Mississippi law, he was not required to flee. See id. Indeed, the only evidence that conceivably contradicts Fairman's claim was White's testimony that Fairman told him that he hit Jones because he was tired of being "picked at." We do not find, however, that Fairman's intolerance for Jones necessarily impedes his self-defense; it is legally consistent under Mississippi law

16

to have dual motivations while defending oneself since state law does not require one in danger to flee before defending himself. Indeed, the law apparently contemplates the situation *sub judice* in which two individuals, fueled by enmity, may confront each other and allows them to use violent means to protect themselves in that confrontation rather than requiring them to disperse. Because Mississippi law provides sanctuary for the party wielding deadly force in such a situation, we find that failure to consider Prewitt's testimony in the context of Fairman's self-defense claim would constitute a fundamental miscarriage of justice.

**IV**

Having determined that failure to consider Fairman's claim would result in a fundamental miscarriage of justice, we may now turn to the merits of Fairman's claim. Because the State, not Fairman, seeks to reverse the district court judgment, it must cross the significant hurdle of proving that the court clearly erred in its factual determinations. Since the State cannot carry this burden, our deferential standard of review for district courts' factual findings mandates affirmance here.

The State contends that the district court erred in finding that the State knowingly used perjured testimony at Fairman's trial, but that conclusion was well within the discretion of the district court, which was charged with taking evidence and then making credibility determinations. In the process, the court, based on long-established law, concluded that the State denied Fairman due process by "knowingly us[ing] perjured testimony at trial or allow[ing] untrue testimony to go uncorrected." Faulder v. Johnson , 81 F.3d 515, 519 (5th Cir. 1996). The court determined that Fairman was entitled to relief because, in its view, he showed "that (1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material." Id. In determining materiality, the court applied the same test as it did for the miscarriage of justice analysis discussed

17

*supra*, that is, that false evidence is "material" only "if there is any reasonable likelihood that [it] could have affected the jury's verdict." Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) (internal quotation omitted).

The magistrate judge recommended that Fairman's request for a new trial be granted on the grounds that the State knowingly used perjured testimony. In making this recommendation, the magistrate judge relied primarily on Prewitt's testimony that (1) Jones wielded a knife as he approached Fairman before their altercation, and (2) the police coerced him to lie at Fairman's trial. The magistrate judge found Prewitt's testimony "wholly credible" in light of his courtroom demeanor and awareness that he risked prosecution for perjury. The district court adopted the report and recommendation of the magistrate judge in its entirety, and we will not reverse the district court where the factual predicate at issue is susceptible to two, equally compelling, views. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985) (holding that "the factfinder's choice between [two views of the evidence] cannot be clearly erroneous").

We pause in conclusion to address several alternative considerations urged by the State. It is unclear from Prewitt's testimony whether the prosecutor possessed actual or constructive notice of Prewitt's perjured testimony. We assume arguendo that evidence supports either of those two findings, because the state did not raise the matter on appeal.

The State has attempted to cast doubt on the district court's factual finding by attacking the credibility of Prewitt's testimony. It argues that the court's finding was clearly erroneous primarily because it was based on the testimony of a recanting witness whose testimony at trial and at the habeas hearing was internally inconsistent. It further argues that White's testimony contradicted

18

Prewitt and that Fairman's inconsistent trial testimony cast doubt on Prewitt's new testimony. None of these reasons persuades us to reverse the district court's findings of fact in this case.

While Prewitt's status as a recanting witness detracts from the credibility of his new testimony, see United States v. Adi, 759 F.2d 404, 408 (5th Cir. 1985) ("[R]ecanting affidavits and witnesses are viewed with extreme suspicion by the courts."), it is not a bar to the acceptance of such testimony. Indeed, for the district judge in this case, Prewitt proffered a convincing reason for his recanting affidavit: the prosecution coerced him to lie at Fairman's trial by threatening to charge him with murdering Jones. Furthermore, while Prewitt never mentioned to White on the night of the altercation that Jones possessed a knife, he explained this omission by testifying that (1) he did not think this information relevant until Jones suddenly died; and (2) White never asked him for any information about the fight at the time.

The State's dispute with the district court's finding generally appears to center on the court's believing Prewitt's testimony. Although White testified that he did not tell Prewitt to lie during Fairman's trial, the court found Prewitt's testimony "wholly credible," and we will not find clear error where a court has chosen one of two rational alternatives in making its determination. See Anderson, 470 U.S. at 573-74. Instead, we will defer to the district court's experience with the record and its having observed the witnesses. See, e.g., United States v. Garcia, 963 F.2d 693, 707 (5th Cir. 1992) (holding that a district court was entitled to accept or reject testimony "on the basis of the witnesses' 'demeanor and candor, or lack thereof' and contradictions in the witnesses' testimony"). In view of the court's having held a hearing and having explicitly found Prewitt's testimony "wholly credible," we believe that the district court did not err in finding that the state knowingly used perjured testimony.

19

**V**

Although we have determined that Fairman did not show cause for his procedural default under Coleman v. Thompson, we nonetheless AFFIRM the district court's decision to allow Fairman to pursue federal habeas relief on the alternate ground that failure to do so would have constituted a fundamental miscarriage of justice. As to the district court's conclusion that the state knowingly used perjured testimony, we do not find clear error, and thus AFFIRM the judgment of the district court. The stay pending appeal is lifted, and Fairman is ordered to be retried or released from custody.

EDITH H. JONES, Circuit Judge, dissenting:

This is a most unusual case in two ways. First, a federal habeas court credits a recanting witness -- a close friend of the petitioner -- while failing to explain why the court disbelieves the testimony of the police officer who denied that he threatened the witness or caused him to testify falsely. Second, although the witness recanted his testimony more than three years after the trial but well within the time allowed to pursue Mississippi post-conviction remedies, the petitioner could not find counsel who would offer the testimony to the state court.

The district court concluded that incompetence led to injustice and granted the writ. The panel has corrected the district court's misapplication of procedural bar doctrine, holding that whether or not Fairman's Mississippi habeas application was delayed by his lawyers' inaction, there was no "cause" under Coleman for the procedural default. Nevertheless, the majority reviews Fairman's procedurally defaulted claim on the merits, because it concludes that it is "more likely than not" that, "in light of the new evidence," all reasonable jurors would accept Fairman's self-defense theory and exonerate him of Jones's murder. Schlup v. Delo, 513 U.S. 298, 327 (1995).

Despite the majority's articulation of the proper standard, and our authority to apply de novo the "more likely than not" aspect of the Schlup test, see O'Dell v. Netherland, 95 F.3d 1214, 1249-50 (4th Cir. 1996) (en banc), aff'd on other grounds, 521 U.S. 151 (1997), I respectfully disagree with the majority's weighing of the probabilities. As Justice O'Connor's necessary fifth vote reiterated in Schlup, the actual innocence gateway is reserved for "extraordinary case[s]" where there is not "any juror who, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 333 (O'Connor, J., concurring) (internal quotation omitted and emphasis

21

added).[8]  The majority concludes: "accepting Prewitt's testimony as true <u>necessitates</u> a finding that Fairman was actually innocent" (emphasis added).

The majority believes that, more likely than not, Fairman would have been acquitted had the jury been told by Prewitt that Jones approached Fairman's truck wielding a knife.  If Jones had a knife and was intending to repeat the day's earlier altercation, a much closer case is made for Fairman's self-defense.  But I question whether it is a reasonable case.

First, no knife was ever found.  It may be contended that because Jones walked home, he could have taken the knife with him and put it away.  Prewitt says he did not tell Officer White about the knife, so White never looked for one.  But the weapon was purportedly a long butcher knife, and Jones was hit very hard by Fairman -- at  least until he fell to the ground and posed no further threat.  It seems most likely that Jones dropped the knife, and if this occurred, it surely would have been visible on the ground.

Second, the scene and events seem more consistent with either an ambush or a duel than with Mississippi's liberal rule on self-defense.  Fairman and Prewitt drove Fairman's truck, with lights off, behind the gas station.  In the dim light, they somehow saw Jones approaching, bearing a butcher knife.  Fairman left the safety of his truck, then returned to it to retrieve his weapon, a stick, and confronted a drunk, butcher-knife-wielding Jones.  A reasonable juror might wonder: is it brave or foolhardy thus to defend against a butcher-knife attack? Or, alternatively, a reasonable juror could find that Fairman's getting out of the truck to beat Jones with a stick like an ax handle was

---

[8]As a leading treatise explains: "[T]he 'actual innocence' test is extremely stringent. ...  The fact that the federal judge herself harbors [a reasonable] doubt, or that many rational jurors would do so, does not suffice as long as it is the case that other, differently disposed but still 'rational,' jurors probably would find the petitioner guilty beyond a reasonable doubt."  2 James S. Liebman and Randy Hertz, <u>Federal Habeas Corpus Practice and Procedure</u> § 26.4 at 1124 n.15 (3d ed. 1998).

"disproportioned" force or went beyond merely "stand[ing] his ground." Haynes v. State, 451 So.2d 227, 229 (Miss. 1984) (quoting Long v. State, 52 Miss. 23, 34 (1876)).

Compounding this fishy story, Fairman told Officer White, just after the incident, that he was tired of being picked on by Jones -- a statement flatly inconsistent with a motive guided by immediate self-defense.[9]

Less important but still troubling is Prewitt's recanting testimony -- contradicting not only Fairman and Officer White but also the majority's description of the facts -- that Officer White came onto the scene when Jones was still on the ground and that Officer White told Jones to get up and go home.[10] If Prewitt is correct, of course, Officer White should have seen the knife, either on Jones's person or on the ground. Fairman does not challenge Officer White's testimony that he did not arrive until after the fight was over. (Indeed, at trial, Fairman and Prewitt both testified that Jones was gone by the time Officer White arrived.) But Fairman's version -- unlike Prewitt's new one -- leaves only two living men who might know whether there was a knife. It has been impossible to recover or examine that weapon ever since Prewitt filed his affidavit.

Under the majority's ruling, perhaps we will find out what all "reasonable jurors" would do with this case. I cordially disagree that, "more likely than not," they will accept Fairman's claim of self-defense.

---

[9]At trial, Fairman claimed he told Officer White that Jones had a knife, but even in his recanting testimony, Prewitt says Fairman told Officer White only that Jones "kept on messing with me, man," and "he kept coming to me, and I got up and I hit him with a stick."

[10]Prewitt repeated this at least five times in his recanting testimony.